Robinson, J.
The bill of exceptions discloses that the estate is insolvent, that the notes for the rent of the farm, due J. W. Barry, as guardian, have not been paid, that the lease of the decedent has been sold by the administrator to the widow of the decedent, and that probably some consideration, the amount of which the record does not disclose, was paid or agreed to be paid by the widow therefor.
This court in the case of Becker v. Walworth, 45 Ohio St., 169, held:
“1. A lease for years, being a chattel interest, passes, at the death of the lessee, to the personal representative, who becomes, by virtue of his office, assignee of the term; and the law specifically appropriates the profits of such leased premises, to an amount equal to the rents reserved in the lease, to the benefit of the lessor. Hence, if such representative enters into possession of the leased premises and receives such profits, he becomes personally liable to the lessor for accruing rents to the extent of the profits of the premises during such occupancy.
*133 “2. In such case the ressor has an election either to look to the estate of the deceased alone for such rents, or to hold the representative personally liable therefor.”
The guardian then had the first claim upon the profits, in this case the sale price which the widow had agreed to pay for the unexpired portion of the term, to the extent of the unpaid balance of the rents due from the decedent.
The record does not disclose the amount of rent due from the decedent, nor the amount paid or agreed to be paid by the widow for the unexpired term. The first exception being for the purpose of adding to the estate items not charged by the appraisers and not charged by the administrator, the burden is upon the exceptors, the plaintiffs in error herein, to prove the existence of such additional assets with which the administrator ought to be charged.
“The burden of establishing more assets than the executor or administrator has accounted for rests upon the objecting party, and the objection must be established with reasonable certainty.” 19 Ency. Pl. & Pr., 1045.
“Upon an accounting by an administratrix the burden of establishing more assets than are acknowledged by the inventory and account is upon the party objecting, who must sustain his contention with reasonable certainty and not leave it to mere conjecture or suspicion.” In re Accounts of Baker, Admx., 42 Hun (App. Div.), 370.
The bill of exceptions failing to show that the lease was disposed of to the widow for a sum *134 greater than the difference between the amount due the guardian upon the notes of decedent and the per cent, which the insolvent estate will be able to pay, and the burden of so showing being upon the exceptors, they have failed to sustain such burden. Such exception will, therefore, be overruled.
The second exception is to the credit the administrator takes in his account for payment of the widow’s $2,000 allowance, notwithstanding the fact that the court had, subsequent to the payment, reduced the allowance to $1,200.
It will be obseryed that the appraisers fixed the allowance at $2,000 on the 15th day of July, 1916, and that no application to review same was made to the probate court, or notice given that such application was contemplated, until March 27, 1917, more than nine months after such allowance had been made, and that in the meantime payment of the original allowance had been made.
Section 10656, General Code, provides: “The appraisers also must set off and allow to the widow, and children under the age of fifteen years, if any there be, or if there be no widow, then- to such children, sufficient provisions or other property to support them for twelve months from the decedent’s death.” And Section 10659 provides: “On petition of the widow, or other person interested, the probate court may review the allowance made to the widow or children, and increase or diminish it, and make such order in the premises as it deems right.”
Since the Code expressly states that the allowance is made “to support them for twelve months from the decedent’s death,” it obviously was the intention *135 of the legislature that such support was to be used during the twelve months, and, from a reading of Section 10714, General Code, it is the more apparent that it was the intention of the legislature that the year’s allowance, whether it consisted of provisions, or of money with which provisions could be purchased, was to be available to the widow and children under fifteen years of age for their enjoyment during the year succeeding the death of decedent for their maintenance and support until they could adjust themselves to the loss of the providing head of the family, for it is there provided:
“Every executor or administrator shall proceed with diligence to pay the debts of the deceased, applying the assets in the following order:
“1. The funeral expenses, those of the last sickness, and the expenses of administration;
“2. The allowance made to the widow and children for their support for twelve months.”
This makes it mandatory upon the administrator upon the payment of the debts included in subdivision 1 to proceed with diligence to pay the allowance made to the widow and children for their support. Section 10659, General Code, provides for a review by the probate court, yet it does not provide any time within which such review shall be invoked, and, therefore, furnishes no guide by which the administrator can determine when he may safely pay such allowance, and if this court were to hold that the payment of the amount fixed by the appraisers, in the absence of collusion and fraud and before any application or notice of intention to file such application to have a review is made, is a payment at the *136 administrator’s peril, it would necessarily follow that no administrator could safely give effect to subdivision 2 of Section 10714, General Code, but on the contrary would be obliged, notwithstanding the fact that that section directs him to pay such allowance with diligence after the payment of the funeral expenses, to withhold such payment until he had settled the estate; in other words the very purpose of the legislature, to furnish the widow and-children under fifteen years of age a livelihood for the twelve months succeeding the death, would be defeated, and the enjoyment of the allowance would be deferred until the final settlement of the estate. It is not the intention to here hold that the right to review the allowance by the probate court and by the common pleas court on appeal does not exist, but to hold that, in the absence of collusion or fraud, the administrator is justified in making the payment of such allowance as soon after it has been fixed by the appraisers as he can ascertain that the estate has sufficient assets after payment of funeral expenses, last sickness and expense of administration to pay the same, unless an application to reduce same has been made, or he has had notice that such application is about to be made, and, further, that a reduction of such an allowance after its payment in good faith does not charge such administrator with such reduction and such administrator can be charged with such reduction only after he has actually recovered to the estate the difference between the amount paid and the amount finally allowed. In other words, in the absence of collusion or fraud, the administrator will be protected in com *137 plying with the provisions of the statute, and if a loss must be sustained that loss must fall upon those whose laches have made the loss possible.
The fourth exception is to a credit of $25 paid to Claud Shaw, which credit the administrator takes in his account upon the theory that under Sections 8355 and 8356, General Code, the same was'a lien upon a colt, a part of the personal property the widow elected to take at the appraisement.
Section 8355, General Code, provides: “The keeper of any stallion * * * shall have a lien upon its get for the period of twelve months after birth thereof, for the payment of the services of such stallion * *
. Section 8356, General Code, provides for the enforcement of such lien by an action in replevin and sale of the colt.
The credit in the account is in the words and figures following: “3/9/17 To Claud Shaw, $25.00.”
The voucher is in the words and figures following:

“Mt. Gilead, Ohio, 3/9/191/.

“Received of J. W. Barry, Admr. of estate Guy Baldwin Twenty-five No/100 Dollars for service of horse.
■ “25.00 Claud Shaw.”
The inventory and appraisement show, among the assets, one nine-year-old mare, Queen, and colt, $325; one thirteen-year-old mare, Diamond, and *138 colt, $250; one nine-year-old sorrel mare and colt, $125.
The testimony of J. W. Barry, called by the plaintiffs in error, as disclosed by the bill of exceptions, upon the subject of this payment, was as follows:
“Q. You also paid $25.00 to Claud Shaw? A. Yes sir, that was for the services of a horse, which was a lien and a preferred claim. I paid it.
“Q. Your receipt I suppose shows when you paid it? A. Yes sir.”
There were other questions propounded to the witness upon the same subject, but none of them called for the facts upon which his conclusion was based and no such facts appear in the record.
With reference to credits taken by an administrator in his account, the burden of proof rests upon such administrator to establish the validity of such items of credit, when challenged. 2 Woerner’s Amer. Law of Administration (2 ed.), Section 540; 1 Rockel’s Ohio Probate Practice (2 ed.), Section 740; and 19 Ency. PI. & Pr., 1044’.
Neither the entry in the account nor the voucher recites any facts which would make this claim a preferred claim. No prima facie case is, therefore, made by this account and voucher; therefore no presumption arises therefrom in favor of such administrator, and in the absence of any proof upon the subject the exception would have to be sustained. The administrator, however, was called by the ex-ceptors as a witness for cross-examination, and while his testimony upon the subject is lacking in detail of facts which would make the claim a lien, and *139 therefore a preferred claim, he did state that the payment “was for the service of a horse, which was a lien and a preferred claim,” and no objection by counsel for the exceptors was made to the answer as stating a conclusion. Counsel having failed to test the correctness of the conclusion by inquiry as to facts which might or might not refute such conclusion, and there being no evidence in the bill of exceptions tending to contradict the conclusion testified to by the administrator, and the appraisement showing at least three colts at side, we are obliged to accept the conclusion as warranted by the facts, and hold, unsatisfactory as the evidence is, that the administrator has sustained the burden cast upon him by law to support the correctness of this particular credit in his account.
The judgment of the court of appeals will, therefore, be affirmed.

Judgment affirmed.

Marshall, C. J., Johnson, Hough, Wanamaker, Jones and Matthias, JJ., concur.